UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 13-20729-CIV-LENARD/GOODMAN

CARLOS GERMAN DIAZ,

      Plaintiff,

vs.

GLOBAL DEVELOPMENT
CONSULTANT INC.,
THE NEW LANGFORD, LLC.,
CARLOS J. MOLINARI, and
DIEGO MOLINARI.

      Defendants.
_____/

**AFFIDAVIT OF DIEGO MOLINARI IN**
**SUPPORT OF MOTION FOR REHEARING, *ETC*.**

STATE OF FLORIDA     )
                              ) ss.
COUNTY OF MIAMI-DADE  )

BEFORE ME, the undersigned Notary Public, State of Florida, appeared the Affiant, DIEGO MOLINARI, who, after first being duly sworn under oath by me, did verify and state:

    1.    My name is Diego Molinari, and all statements made by me in this affidavit are based upon personal knowledge and my review of the records kept in the regularly-conducted business activities of The New Langford, LLC ("New Langford"), and Global Development Consultant, Inc. ("Global

**Carlos German Diaz v. Global Development Consultant, Inc.,** *et al.*
**CASE NO: 13-20729-CIV-LENARD/GOODMAN**

Development"), and my review of the online Docket Sheet of the Eleventh Judicial Circuit Court, and the online records of the Florida Division of Corporations.

2. I am a son of the other individual co-defendant, Carlos Juan Molinari, who is a citizen and resident of the Argentine Republic, who is neither fluent nor literate in English, and who never graduated from high school ("Carlos Molinari").

3. On November 2014, The Republic of Argentina indicted my father on different charges that led to an order to freeze his assets, and to restrict his right to travel abroad, situation that is complemented with an order compelling him to report to the court every two weeks. At this moment, upon my knowledge and believe, my father is unable to leave Argentina.

4. Further, the estranged wife of Carlos Juan Molinari, Alicia Rolenc—who was the plaintiff's supervisor, friend, and, based upon knowledge and belief, lover—retains possession, custody, and control over the books, records, and files of the plaintiff's employer, The New Langford, LLC, and refuses to release them to the defendants.

A. *The Plaintiff*

5. As alleged in his First Amended Complaint, plaintiff, Carlos German Diaz ("Mr. Diaz"), worked "as a property maintenance man" for the New

Carlos German Diaz v. Global Development Consultant, Inc., *et al.*
CASE NO: 13-20729-CIV-LENARD/GOODMAN

Langford (*see* ¶ 10), in the vacant Langford Building located at 121 S.E. 1st Street, Miami, Florida ("Langford Building").[1]

6. The New Langford acquired the Langford Building in January 2001, at which time it was closed to the public, shuttered, and devoid of (paying) tenants.

7. When the Langford Building was purchased by the New Langford in January 2001, Mr. Diaz was the employee of the prior owner, and he was the only tenant of the Langford Building (where he resided on the 4th floor).

8. Carlos Diaz worked for the New Langford, in the Langford Building, at his own pace and largely under his own supervision and control—being its only maintenance man and resident tenant.

9. Mr. Diaz was the *only* employee of the New Langford, and Mr. Diaz was *never* an employee of Global Development.

10. Intermittently, and on an as-needed basis, Mr. Diaz would report to and take direction from Alicia Rolenc, the estranged wife of Carlos Molinari who resided on Brickell Key (i.e., across the Miami River from the Langford

---

[1] The Langford Building was built in 1925 as the City National Bank Building, and, as stated in the 1988 Report of the City of Miami Planning Department to the Heritage Conservation Board: "The City National Bank Building is architecturally noteworthy as a unique record of early twentieth century commercial design in Miami as evidenced through the building's façade composition, the open loggia, and the classically-inspired decorative ornamentation. The building is historically significant for its associations with the commercial development of Miami at the height of the Boom.

Building).

11. Mr. Diaz never traveled outside of Florida for any purpose related to his employment "as a property maintenance man" by the New Langford, or for or on behalf of any one or combination of defendants.

12. The Langford Building remained closed to the public, shuttered, and devoid of (paying) tenants, continuously from the time it was acquired by the New Langford until it was lost in foreclosure.

13. In roughly October 2011, the Republic of Argentina imposed currency restrictions on the purchase of United States Dollars in an attempt to reduce capital flight and, thereafter through the present, required prior approval by its national tax agency (AFIP), to effectuate purchases of USD.

14. As a direct and proximate result of the Argentine currency controls, Carlos Molinari began to encounter problems transferring funds to pay either Mr. Diaz's salary or the note and mortgage encumbering the Langford Building, or the note and mortgage on the condominium on Brickell Key owned by him and occupied by Alicia Rolenc.

15. Consequently, on March 15, 2012, the New Langford was sued for foreclosure of the Langford Building, in the Eleventh Judicial Circuit, whereupon Mr. Diaz was personally given notice that his employment was being terminated.

Carlos German Diaz v. Global Development Consultant, Inc., *et al.*
CASE NO: 13-20729-CIV-LENARD/GOODMAN

16. Mr. Diaz remained employed by the New Langford until June 2012, at which time his employment ended, and through which time he was paid in full.

17. Because the Langford Building had been his home for over 11 years, Mr. Diaz was allowed to continue living there after his employment had ended.

18. On October 31, 2012, Carlos Molinari and Alicia Rolenc were sued for foreclosure of the Brickell Key condominium, in the Eleventh Judicial Circuit.

*19.* To the best of my information and belief, Mr. Diaz continued residing in the Langford Building until the foreclosure sale in February 2013.

*20.* Mr. Diaz's Third Amended Complaint alleges numerous false and misleading statements, including:

(a) In paragraph 12 Mr. Diaz alleges that the "Defendants' business consisted of international companies owning and operating buildings within Florida, which it would renovate and then sell," but the only building that any Defendant ever owned in Florida was the Langford Building, it was owned by The New Langford, LLC, it was never renovated, and it was lost in foreclosure.

(b) In paragraph 13 Mr. Diaz alleges that the "Defendants regularly employed two or more employees for the relevant time period who handled goods or materials that travelled through interstate commerce, or used instrumentalities of interstate commerce," but Mr. Diaz was the only employee of The New Langford, LLC, and only its employee. As for Global Development Consultant Inc, the company had 6 employees (including myself) who never traveled outside the State of Florida for any business

5

related purpose. Our job was "desk job" related to install a factory to renovate ocean-freight containers into emergency shelters in the City of Miami. All 6 employees were registered, all its taxes were paid and worked for 40 hours a week, from Monday to Friday. The employment time was less than a year since my L1 Visa renovation was rejected by the United States Customs and Immigration Service on November 2011. From that date to May 2012, the employments were terminated and the company was working in "life support" due to lack of funds and my inability to manage it because of my immigration status.

(c) In paragraph 16 Mr. Diaz alleges that "the work performed by Plaintiff simultaneously benefited all Defendant Companies who were responsible for controlling Plaintiff's hours, determining Plaintiff's pay and which were operated by the same limited liability company officers for a common business purpose," but, as he alleges, Mr. Diaz was a "property maintenance man," Global Development Consultant, Inc. owned no property to maintain (it was trying to start a business renovation ocean-freight containers into emergency shelters), and Mr. Diaz was never employed by that company—as verified in my affidavit filed back in October 2013.

(d) In paragraph 19, Mr. Diaz alleges that he "worked for Defendants as a property maintenance man from on or about 2001 through on or about December 31, 2012," but, verified in my affidavit filed back in October 2013, I did not even move from Argentina to Miami until October 2009, and Global Development Consultant, Inc. was not even formed until December 3, 2009.

### B. *The Defendants*

#### (i) The New Langford, LLC

21. The New Langford was formed on May 30, 2000, for the sole purpose of acquiring and restoring the historic Langford Building. The New Langford purchased the Langford Building from S.I. of Miami, Corp. on January 3, 2001.

22. The sole and exclusive activity of the New Langford was and always

remained to acquire, hold, and it was hoped, to someday restore the Langford Building. The Langford Building was the only holding of the New Langford.

23. The New Langford has never produced or sold any goods, materials, or services, it has never leased or rented space, and it has never received any rents.

24. Carlos Molinari has been the single Manager/Member of the New Langford since 2006.[2]

25. My younger brother, Matias Molinari, who is a citizen and resident of Argentina, and who never graduated from high school, was a Manager of the New Langford from 2007 until 2012.

26. The Langford Building was sued for foreclosure on March 15, 2012, and, whereupon, the New Langford had to terminate Mr. Diaz's employment.

27. On April 29, 2012, my brother Carlos L. Molinari, my sister, Maria F. Molinari, and I were added as Managers of the New Langford, because my father and younger brother could no longer stay abreast of developments from Argentina.

28. Land Developer S.A. USA, Inc., Matias Molinari, Carlos L. Molinari, and Maria F. Molinari have never had any interest in, management of, or

---

[2] From 2000 until 2005, my father and Land Developer S.A. USA, Inc. were the two Manager/Members of the New Langford.

control over Global Development—and *vice versa*. My sister, Maria F. Molinari, was an employee of Global Development, but with only intermittent duties—none of which were managerial—because the business never got off the ground.

29. From 2000-2004, the New Langford's principal place of business was 100 North Biscayne Boulevard, Miami, Florida, which, in August 2004, was changed to 121 S.E. 1st Street, Miami, Florida (i.e., the Langford Building). Global Development never had offices or a mailing address at either of those addresses.

30. The New Langford has never worked for or with Global Development in any way, manner, form, or fashion, and it has never shared any offices or space with Global Development, and its sole and exclusive activity was entirely unrelated to any activity of Global Development—and *vice versa*.

31. Neither Global Development nor I have had any ownership interest in the New Langford, nor any ownership interest in the Langford Building.

32. Neither Global Development nor I were involved in the day-to-day operation of the New Langford, and neither of us had any responsibility for the supervision of Mr. Diaz.

33. The New Langford did not suffer or permit Mr. Diaz to work more than 40 hours during any given workweek, or to work any overtime whatsoever, as

he alleges now.

34. The New Langford did not know, nor did it have any reason to know or suspect, that Mr. Diaz continued to work more than 40 hours during any given workweek, or that he worked any overtime whatsoever, as he alleges now.

35. The New Langford was merely a holding company whose sole "asset" was a condemned and vacant building, which had no certificate of occupancy, no paying tenants or lessees, and, consequently, no revenues or sales, or income.

36. The total income of the New Langford, including gross receipts and sales—e.g., the combined line items 1-8 on Form 1065, U.S. Return of Partnership Income—was **$0.00** in years 2007, 2008, 2009, 2010, 2011, and 2012.

   (ii)  Global Development

37. Global Development was formed on December 3, 2009, to develop techniques for constructing emergency homes using recycled shipping containers.

38. Global Development existed solely and exclusively to try to develop techniques for constructing emergency homes using recycled shipping containers.

39. Global Development never completed a single emergency home for use

**Carlos German Diaz v. Global Development Consultant, Inc.,** *et al.*
**CASE NO: 13-20729-CIV-LENARD/GOODMAN**

or sale, and it has never produced nor sold any goods, materials, or services.

40. From 2009-2010, my father was the President, Jorge Negrin was Vice President, and I was the Treasurer of Global Development, since August 10, 2010.

41. Global Development has been effectively out-of-business since 2011.

42. Land Developer S.A. USA, Inc., Matias Molinari, Carlos L. Molinari, and Maria F. Molinari have never had any interest in, management of, or control over Global Development—and *vice versa*.

43. Jorge Negrin never had any interest in, management of, or control over the New Langford or the Langford Building, I never had any interest in either the New Langford or the Langford Building, and I had no management of or control over either until after April 12, 2012.

44. From 2009-2010, Global Development was located at 10431 N.W. 28th Street, Doral, Florida, and, in August of 2010, it moved to 175 S.W. 7th Street, Miami, Florida. The New Langford never had any office, nor principal place of business, nor did any business, at or from either of those addresses.

45. Global Development has never worked for or with the New Langford any way, manner, form, or fashion, it has never shared any offices or space with Global Development, and its sole and exclusive activity was entirely unrelated to the activity of Global Development (and *vice versa*).

10

Carlos German Diaz v. Global Development Consultant, Inc., *et al.*
CASE NO: 13-20729-CIV-LENARD/GOODMAN

46. Mr. Diaz was never employed by, nor was he ever an employee of, Global Development.

47. Neither Global Development nor I had any responsibility whatsoever for the supervision of Mr. Diaz, and my father had only indirect responsibility.

48. One day in about March 2010, Global Development was working with a welder in Doral, near Miami International Airport, recycling a shipping container to transform it into a prototype emergency response unit. We needed some extra muscle, and Mr. Diaz and several other guys volunteered and lent us a hand.

49. Other than that single day back in March 2010, Mr. Diaz never did anything for or on behalf of Global Development.

50. Global Development was asked to cover several mortgage payments and payrolls for the New Langford—due to the Argentine currency controls—but it did so as solely as an advance of funds to cover the New Langford.

51. Global Development did not suffer or permit Mr. Diaz to work more than 40 hours during any workweek for anybody, and it did not suffer or permit Mr. Diaz to work any overtime whatsoever, as he alleges now.

52. Global Development did not know, nor did it have any reason to know or suspect, that Mr. Diaz continued to work more than 40 hours during any

**Carlos German Diaz v. Global Development Consultant, Inc.,** *et al.*
**CASE NO: 13-20729-CIV-LENARD/GOODMAN**

given workweek, or that he worked any overtime whatsoever, as he alleges now.

53. The total income of Global Development, including gross receipts and sales—e.g., combined line items 1-11 on Form 1120, U.S. Corporation Income Tax Return—was **$0.00** in each and all years 2009, 2010, in 2011, and 2012.

### (iii) Carlos Juan Molinari

54. My father, Carlos Molinari, is a citizen and resident of the Argentine Republic, who is neither fluent nor literate in English, and who never graduated from high school.

55. In 2001-2002, Carlos Molinari was issued a Non-Immigrant Visa for Investors (E2 Visa), but he was never issued a "green card."

56. Because Carlos Molinari resides in Argentina, and travels extensively worldwide, it was physically impossible and impractical for him to be involved in any of the day-to-day operations of either the vacant Langford Building or the New Langford, much less to have any direct or indirect responsibility for the supervision of Carlos Diaz.

57. Carlos Molinari did not suffer or permit Mr. Diaz to work more than 40 hours during any given workweek, or to work any overtime whatsoever.

58. Because Carlos Molinari is a resident of Argentina, and not a resident

of the United States, if Mr. Diaz's claim were true, then my father would not have known, nor would he have had any reason to know or suspect, that Mr. Diaz had continued to work more than 40 hours during any workweek, or that he had worked any overtime whatsoever.

59. In fact, because Mr. Diaz worked in and was the only tenant of the Langford Building for over a decade, only Mr. Diaz would have known for certain whether he had or had not, and only he can vouch for himself.

60. Based upon my knowledge of his earnings, and review of his records including his affidavit, tax, and income records, Carlos Molinari, a nonresident alien, had gross Income Effectively Connected with U.S. Trade/Business—e.g., the combined total of line items 8-23 on Form 1040NR, U.S. Nonresident Alien Income Tax Return—of $89,509 in 2007, $4,608 in 2008, $3.00 in 2009, $0.00 in 2010, $0.00 in 2011, and $0.00 in 2012—*without* subtracting losses.

(iv) Diego Molinari

61. I am a citizen of the Argentine Republic, and I never graduated from high school either.

62. I moved from Argentina to Miami in October of 2009. I did not have a United States work visa in 2009, and, consequently, I could not and did not work or earn any income in 2009.

Carlos German Diaz v. Global Development Consultant, Inc., *et al.*
CASE NO: 13-20729-CIV-LENARD/GOODMAN

63. In May 2010 I applied for a working visa with Global Development as my sponsor, which was approved at the end of August 2010 (and which was good only through November 2011).

64. Consequently, I did not receive a paycheck until November 2010.

65. In December 2011 I returned on a tourist visa, which did not allow me to work. I've got my E2 Visa approval by the end of 2012.

66. I am the Vice President of Global Development, and I was added as a Manager of the New Langford on April 29, 2012, at which time I was informed that Mr. Diaz would no longer be employed by the New Langford.

67. I never had any responsibility for the supervision of Mr. Diaz, and I only got involved in the "operation" of the New Langford after April 29, 2012.

68. My gross and total income—e.g., combined line items 7-21 on IRS Form 1040, U.S. Individual Income Tax Return—was $0.00 in 2009, $40,992 in 2010, $73,113 in 2011, and $0.00 in 2012 (starting which year I could not work).

69. Accordingly, the combined gross revenues, sales, and income for all defendants, for each of the years 2007, 2008, 2009, 2010, 2011, and 2012, totaled:

- 2007 = $ 89,509.00
- 2008 = $  4,608.00

Carlos German Diaz v. Global Development Consultant, Inc., *et al.*
CASE NO: 13-20729-CIV-LENARD/GOODMAN

- 2009 = $      3.00
- 2010 = $ 40,992.00
- 2011 = $ 73,113.00
- 2012 = $      0.00

70. Consequently, the combined gross revenues, sales, and income for all four of the defendants—*combined*—for the years 2007, 2008, 2009, 2010, 2011, and 2012—*combined*—totaled only **$208,225**.

71. I never had any right, power, privilege or prerogative to hire or fire Mr. Carlos Diaz, or to set or modify his pay, or to control or manage his work or hours, and I never did so.

I declare, certify, verify, and state under penalty of perjury under the laws of the United States of America that the foregoing is **true and correct**. Executed on this 18 day of February 2015.

_____
DIEGO MOLINARI

The foregoing affidavit, the Affidavit of Diego Molinari in Support of Motion for Rehearing, *Etc.*, was acknowledged before me this _10_ day of February 2015, by the Affiant, Diego Molinari, who personally appeared before me at the time of acknowledging and notarization, who is personally well known to me, and who executed the foregoing instrument and who did take an oath.

_____
NOTARY PUBLIC

**VANESSA RANGHI**
MY COMMISSION #FF064936
EXPIRES October 21, 2017
(407) 398-0153   FloridaNotaryService.com

**Certificate of Service**

15

Carlos German Diaz v. Global Development Consultant, Inc., *et al.*
CASE NO: 13-20729-CIV-LENARD/GOODMAN

I hereby certify that a true and correct copy of the foregoing, the Affidavit of Diego Molinari in Support of Motion for Rehearing, *Etc.*, was served on all counsel or parties of record by electronically filed the foregoing document with the Clerk of the Court on February 18, 2015 using CM/ECF.

s/John H. Patterson Jr.
John H. Patterson Jr.

## SERVICE LIST
Carlos German Diaz v. Global Development Consultant, Inc., *et al.*
CASE NO: 13-20729-CIV-LENARD/GOODMAN
United States District Court – Southern District of Florida

Julia Garrett, Esq.
jgarrett.jhzidellpa@gmail.com
J. H. Zidell, PA
300 71st Street
Suite 605
Miami Beach, Florida 33141
Telephone 305.865-6766
Facsimile 305.865-7167
Attorney for Plaintiff
Served via Notice of Electronic Filing

Daniel T. Feld
DanielFeld.Esq@gmail.com
J. H. Zidell, PA
300 71st Street
Suite 605
Miami Beach, Florida 33141
Telephone 305.865-6766
Facsimile 305.865-7167
Attorney for Plaintiff
Served via Notice of Electronic Filing

Carlos German Diaz v. Global Development Consultant, Inc., *et al.*
CASE NO: 13-20729-CIV-LENARD/GOODMAN

Jamie H. Zidell
Zabogado@aol.com
300 71st Street
Suite 605
Miami Beach, Florida 33141
Telephone 305.865-6766
Facsimile 305.865-7167
Attorney for Plaintiff
Served via Notice of Electronic Filing

Carlos Juan Molinari
cjm_2003@hotmail.com
jestebanvillar@yahoo.com.ar
c/o REI Fiduciaria S.A.
Av. Libertador 5926 2º Piso "A" Sur, CPA: C1001ABF
Buenos Aires, Argentina
Served via Notice of Electronic Filing and U.S. Mail

Global Development Consultant, Inc.
c/o Diego Molinari, Vice President
The New Langford, LLC
c/o Diego Molinari, Manager
diegomolinari@live.com
1685 Yellowheart Way
Hollywood, Florida 33019
Company Defendant
Served via Notice of Electronic Filing and U.S. Mail

Diego Molinari
diegomolinari@live.com
1685 Yellowheart Way
Hollywood, Florida 33019
Individual Defendant
Served via Notice of Electronic Filing and U.S. Mail

[PAT\1369-011\AF.DIEGO.REHEAR]